IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIMOTHY L. KING, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION FILE NO. |
| | ) 1:23-CV-00095-JCF |
| TRUIST BANK, | ) |
| Defendant. | ) |

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Timothy L. King and files his Brief in Response to Defendant's Motion for Summary Judgment. Contemporaneously herewith and in further support of his Brief, Plaintiff files his Response to Defendant's Statement of Material Facts and Additional Material Facts, the Declaration of Timothy L. King, a Motion to Withdraw Admissions, and a Brief in support of the Motion to Withdraw Admissions. Plaintiff respectfully requests that this Court DENY Defendant's Motion for Summary Judgment and shows the Court as follows:

**INTRODUCTION**

Plaintiff initially filed his Complaint as a *pro se* litigant in the State Court of DeKalb County, Georgia on November 23, 2022. (Dkt. 1-1). Defendant Truist Bank (the "Bank") removed the case to this Court. (Dkt. 1). As a result of the Bank's

1

mismanagement of Plaintiff's Line of Credit ("LOC") account, inaccurate reporting to certain Credit Reporting Agencies ("CRAs"), and failure to accurately or appropriately investigate when required, Plaintiff has injuries for which he deserves redress.  Plaintiff seeks relief pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b).

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS PRESENTING A GENUINE ISSUE FOR TRIAL

In or around February 2022, Plaintiff received correspondence that his line of credit account ("LOC") with Suntrust Bank had been transferred to Truist (the "2/2022 Transfer Letter").  King Decl. ¶ 2; Ex. 1; Plaintiff's Additional Material Facts ("AMF") ¶ 1.  The Bank failed to transfer all the payments on the old account to the new account with the Bank.  Plaintiff filed a dispute with the Bank regarding the same (Dispute No. 3296220637).  King Decl. ¶ 3; AMF ¶ 2.  Plaintiff continued to experience problems with the Bank as time went on.  For instance, during the period alleged in the Complaint, Plaintiff believes that the Bank misapplied payments and committed other errors relating to his LOC which resulted in damage to him.  The Bank's own statements and admissions support this.  King Decl. ¶ 4; AMF ¶ 3.

Specifically, on or around April 29, 2022, the Bank notified Plaintiff that it had suspended his ability to obtain any additional advances on my LOC (the "4/29/22 Suspension Letter").  The reason specified by the correspondence was

"Delinquency on this account." King Decl. ¶ 5; Ex. 2; AMF ¶ 4. As a result of this action by the Bank, Plaintiff was unable to access his available credit for purchases. Upon information and belief, the allegations contained in the 4/29/22 Suspension Letter were untrue. King Decl. ¶ 6; AMF ¶ 5.

Plaintiff continued to receive correspondence from the Bank that alleged delinquency on his part, although he believed them to be in error. For example, Plaintiff received correspondence from the Bank dated May 24, 2022, alleging that his LOC account was two payments past due and that he owed $401.48 (the "5/24/22 Delinquency Letter"). The 5/24/22 Delinquency Letter further indicated that the alleged late payments could have a negative impact on his credit. King Decl. ¶ 7; Ex. 3; AMF ¶ 6.

The Bank confirmed Plaintiff's beliefs and concerns that it has committed errors related to his LOC account at least twice in correspondence admitting and apologizing for errors related to the LOC account, and reflecting actions the Bank was forced to take to correct its mistakes (the "Error Acknowledgment Letters"). King Decl. ¶ 8; Ex. 4; AMF ¶ 7. The Bank's apology and corrective actions proved too late, however. As a result of the Bank's errors and its subsequent inaccuracies reported to various Credit Reporting Agencies ("CRAs"), Plaintiff's credit score plummeted. Plaintiff obtained a copy of a graph from CRA Experian on or around June 15, 2022 (after the inaccuracies were reported to them) showing his credit score,

including a sharp decline around the time of the delinquencies alleged by the Bank. King Decl. ¶ 9; Ex. 5; AMF ¶ 8.

Plaintiff was denied credit by Travis Credit Union via correspondence dated May 27, 2022 ("Credit Denial Letter 1"). Page 2 of the Credit Denial Letter indicates that my credit score had fallen to 586. King Decl. ¶ 10; Ex. 6; AMF ¶ 9. Plaintiff's company L&J Endeavors, Inc. was denied credit because of the credit history of its personal guarantor (Plaintiff) by Synchrony Bank (Lowes-GA) via correspondence dated June 5, 2022 ("Credit Denial Letter 2"). King Decl. ¶ 11; Ex. 7; AMF ¶ 10.

Plaintiff notified the CRAs that he disputed the information reported by the Bank. King Decl. ¶ 12; AMF ¶ 11. On or around September 1, 2022, Plaintiff was notified by Transunion that it had taken corrective action on his account pursuant to his dispute (the "9/1/2022 Transunion Correspondence"). Specifically, they adjusted my rating and the maximum delinquency showing for his LOC with the Bank. The revised report reflects the "Pay Status" as "Current; Paid or Paying as Agreed" and indicates "OK" for payments ranging from 11/2021 through 06/2022. King Decl. ¶ 13; Ex. 8; AMF ¶ 12.

In addition to damage to his creditworthiness, the impact of the Bank's errors and insufficient investigation on his financial situation caused Plaintiff to experience stress, anxiety, sleeplessness, feelings of humiliation, and bouts of depression as a result of the errors the Bank committed. King Decl. ¶ 14; AMF ¶ 13.

## ARGUMENT AND CITATION OF AUTHORITY

The Bank is not entitled to summary judgment in this case. Despite its best efforts to justify the actions, inactions, and mistakes it made, violations of the FCRA remain evident. Additionally, multiple disputed issues remain precluding a grant of summary judgment.

### I.  Summary Judgment Standard

Only where there is no genuine issue of material fact will it be proper for a court to grant summary judgment. *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1246 (11th Cir. 1999)(citations omitted). It is the moving party (here, Defendant's) responsibility to meet this standard. *Id*. The Eleventh Circuit has provided additional guidance to apply when evaluating whether summary judgment is appropriate:

> [T]he courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.

*Id.* (citations omitted). Moreover, "credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." Graham v. State Farm, 193 F.3d 1274, 1282 (11th Cir. 1999).

## II. Withdraw of Admissions

Much of the Bank's argument that it is entitled to summary judgment rests upon the failure of Plaintiff to file his responses to Defendant's Request for Admissions. However, contemporaneously filed herewith, Plaintiff has moved to withdraw those admissions.[1] Moreover, granting summary judgment to the Bank as a result of Plaintiff's failure to reply would essentially amount to a grant of summary judgment by default. Such action should not be authorized. *See Trustees of Cent. Pen. Fund v. Wolf Crane Service*, 374 F.3d 1035, 1040 (11th Cir. 2004)("[S]ummary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment . . . ."). This case should be decided on their merits. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014)("And we have a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible.").

## III. Plaintiff's FCRA Claim

The FCRA is designed to protect consumers from incorrect or flawed financial information being reported against them. Stated another way: "The FCRA protects consumers from having inaccurate information about their credit status circulated in

---

[1] Plaintiff incorporates herein by reference his Motion to Withdraw Admissions and Brief in Support.

6

order to protect their reputation." *Pinckney v. Slm Financial Corp.*, 433 F. Supp. 2d 1316, 1319 (N.D.Ga. 2005).  Plaintiff's FCRA claim, and specifically the mandates of 15 U.S.C. § 1681s-2(b), required that once the Bank received notice from the CRAs that Plaintiff disputed its information, it had to "conduct an investigation, review all relevant information provided by the CRA, and report its results to the CRA."   *Hunt v. JP Morgan Chase Bank*, No. 18-11306, *12 (11th Cir. 2019)(unpublished).

    *A. Inaccurate Reporting*

Understandably so, Defendant seeks yet another quick fix to the problems it faces under the FCRA; it incorrectly asserts that Plaintiff cannot establish the "threshold inquiry" because none of the Bank's reporting was inaccurate.  However, Defendant's own records and testimony belie this contention.

Defendant cites *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1218 (11th Cir. 2023) for the proposition that "[A] report must be factually incorrect, objectively likely to mislead its intended user, or both" to be in violation of the FCRA.  It then repeatedly claims that Plaintiff cannot satisfy this requirement.  No matter how frequently the Bank raises this concern, however, it does not make it accurate.

In fact, the Bank's own evidence demonstrates that its records and reporting were either factually inaccuracy or, at least, objectively misleading.  For example, the Bank sent a response to one CRA noting that Plaintiff's account was one month

7

late in April 2022 and two months late in May 2022; however, not even a month later, it reported to a second CRA only that Plaintiff's account was one month late in May. *See* Bank's Statement of Facts, ¶¶ 27, 28. Looking solely at these two documents, either the first is inaccurate or the second is.

Moreover, Transunion found an error in the Bank's reporting necessitating a correction to Plaintiff's credit report deleting any late payments. (King Decl. ¶ 13; Ex. 8). Not only did third parties discover the Bank's inaccurate reporting, the Bank, itself, twice acknowledged and apologized for errors it made with regard to Plaintiff's account. (King Decl. ¶ 8; Ex. 4).

It is disingenuous for the Bank to assert that its information was accurate when its own evidence and correspondence highlight its errors. The record of this case adequately demonstrates that Plaintiff has satisfied a threshold burden of establishing inaccurate or misleading information. As such, a grant of summary judgment to the Bank is not appropriate.

### B. Insufficient Investigation

When he learned of the Bank's inaccuracies related to his LOC and suspected their incorrect reporting, Plaintiff notified the various CRAs of his disputes. Once the Bank received the notifications from the CRA, it was bound to act. *See Thomas v. Wells Fargo Bank*, Civil Action No. 1:17-CV-3146-TWT-JSA, *18 (N.D. Ga. 2018)("The plain language of the FCRA creates a duty that arises as of the furnisher's

8

receipt from a consumer reporting agency of notification of a consumer's dispute."). Specifically, "the furnisher of information must: (1) "conduct an investigation with respect to the disputed information"; (2) "review all relevant information provided by the [CRA]" in connection with the dispute; and (3) "report the results of the investigation to the [CRA]." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301 (11th Cir. 2016). The Bank correctly notes the FCRA examines whether the Bank's required investigation of the identified dispute was "reasonable." *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018).

Ironically, despite the Bank's bluster that Plaintiff has no evidence to support his claims, the Bank notably has offered absolutely no evidence (testimonial, documentary, or otherwise) by which this Court could determine whether and to what extent the Bank conducted *any* investigation. For example, in its Statement of Undisputed Material Facts the Bank jumps from a statement that "The CRAs sent the disputes to Truist" (Bank's SMF, ¶ 25) directly to "Truist responded to the . . . ACDV[s]" (Bank's SMF, ¶¶ 26, 27). While the Bank, at this stage in the litigation, need not demonstrate it fulfilled the duty imposed upon it by the FCRA, its failure to detail *any* investigation certainly does nothing to bolster the Bank's assertions of accuracy on its part.

*C. Damages*

The Bank's final attempt to persuade this Court to grant the Bank's summary judgment is to allege that despite the errors related to Plaintiff's LOC, Plaintiff suffered no damages. This bald accusation is baseless.

First, accompanying the King Declaration are two credit denials. (King Decl., ¶¶ 10, 11; Ex. 6, 7). Although the dates of the denials (late May 2022 and early June 2022) predate the Banks' first response to the ACDV, they come after the Bank's erroneous allegations of late payments and letter alluding to adverse credit reporting. (King Decl., ¶ 7; Ex. 3). Additionally, Plaintiff's credit rating also suffered from the Bank's error. (King Decl., ¶¶ 9, 10; Ex. 5, 6).

Additionally, the FCRA does not require that the damage to a plaintiff be economic. *See Bumpus v. Nat'l Credit Sys.*, Civil Action File No. 1:16-CV-1209-TWT-JFK, *31-32 (N.D.Ga. 2017)(finding evidence of emotional damage such as inability to sleep, embarrassment, and nervousness sufficient to survive a defendant's motion for summary judgment in a FCRA case). Here, as in *Bumpus*, Plaintiff has suffered a variety of manifestations related to the emotional distress caused by the Bank. (King Decl., ¶ 14).

As a result of the Bank's inaccurate accounting and reporting, Plaintiff has suffered monetary and emotional damages. He should be allowed to present these damages to the jury, and therefore, summary judgment is inappropriate.

## **CONCLUSION**

Despite the Bank's allegations to the contrary, it is not entitled to summary judgment. Given clear precedent, as well as Plaintiff's Motion to Withdraw his Admissions, a grant of summary judgment based solely on Plaintiff's failure to respond to the Bank's Requests for Admissions would be improper. Moreover, the Bank's assertion that none of its reporting was inaccurate is belied even by its own evidence. Additionally, the Bank ignores the issue of its required investigation was even performed. Finally, Plaintiff has established not only economic, but also emotional damages as a result of the Bank's violation of the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court DENY Defendant's Motion for Summary Judgment.

Respectfully submitted this 7 day of November, 2023.

>/s/ C. M. Douglas
>Chuck M. Douglas
>Attorney for Plaintiff
>Georgia Bar No. 939932
>
>WAKHISI-DOUGLAS, LLC
>1055 Howell Mill Road– Suite 800
>Atlanta, Georgia 30318
>404-566-2320 (Phone)
>866-566-1232 (Facsimile)
>cmdouglas@wd-law.net

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TIMOTHY L. KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE NO. |
| ) | 1:23-CV-00095-JCF |
| TRUIST BANK, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE AND COMPLIANCE

    I hereby certify that on November 7, 2023, I electronically filed Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Joseph M. Englert
jenglert@mcguirewoods.com
M. Laughlin Allen
mlallen@mcguirewoods.com
Katherine E. Lehnen
klehnen@mcguirewoods.com

I further certify that I prepared this document in 14 point Times New Roman Font and complied with the margins and type requirements of this Court.

                                      */s/ C. M. Douglas*
                                      Chuck M. Douglas
                                      Attorney for Plaintiff
                                      Georgia Bar No. 939932
                                      WAKHISI-DOUGLAS, LLC
                                      1055 Howell Mill Road– Suite 800
                                      Atlanta, Georgia 30318
                                      404-566-2320 (Phone)
                                      866-566-1232 (Facsimile)
                                      cmdouglas@wd-law.net