IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIMOTHY L. KING,                     :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :        CIVIL ACTION NO.
                                     :        1:23-CV-00095-JCF
TRUIST BANK,                         :
                                     :
        Defendant.                   :

## FINAL ORDER

This case is before the Court on Defendant's Motion For Summary Judgment (Doc. 23), Plaintiff's Motion To Withdraw Admissions And File Out-Of-Time Responses (Doc. 25), and Plaintiff's Motion To Set Aside Judgment (Doc. 29). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motions to withdraw admissions and to set aside judgment are **DENIED**.[1]

### Factual And Procedural Background

On November 23, 2022, Timothy L. King ("Plaintiff"), then proceeding *pro se*, filed a Complaint against Defendant Truist Bank ("Truist" or "Defendant") in the

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, and this case has been referred to the undersigned for those purposes, pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. (*See* Docs. 6, 10).

State Court of DeKalb County in which he alleged that Defendant erroneously reported two late payments on Plaintiff's HELOC (home equity line of credit) account to the consumer reporting agencies ("CRAs"), which harmed his credit rating and ability to obtain credit, and that Defendant failed to remove the inaccurate reporting for five months after Plaintiff disputed it with the CRAs and with Defendant. (Doc. 1-1 at 4-6). Defendant removed the action to this Court on January 9, 2023 on the basis of federal question jurisdiction as a federal statute, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., creates the cause of action asserted by Plaintiff. (Doc. 1). Defendant answered (Doc. 3), and discovery proceeded. Counsel for Plaintiff appeared on February 28, 2023 (Doc. 15), and discovery was later extended until September 14, 2023 at the parties' joint request (Docs. 18; May 18, 2023 minute entry Order). On August 15, 2023, Defendant served Plaintiff, via counsel, with First Set of Interrogatories, First Requests for Production of Documents, and First Requests for Admission (*see* Doc. 19), but as discussed below, Plaintiff did not respond to those discovery requests, including the requests for admission.

After the discovery period ended, Defendant moved for summary judgment on October 16, 2023 (Doc. 23), with supporting brief (Doc. 23-1), statement of material undisputed facts (Doc. 23-2), and exhibits (Docs. 23-3 through 23-5). One of Defendant's exhibits in support of its motion for summary judgment is

Defendant's First Requests For Admission To Timothy L. King (Doc. 23-4). On November 7, 2023, Plaintiff responded in opposition to Defendant's motion with supporting brief (Doc. 12), a response to Defendant's statement of material facts and a statement of additional material facts (Doc. 24-10), and exhibits (Docs. 24-2 through 24-9).[2] Plaintiff also moved to withdraw his admissions and to file out-of-time response to Defendant's requests for admissions. (Doc. 25). Defendant replied in support of its motion for summary judgment (Doc. 26), responded to Plaintiff's statement of additional facts (Doc. 27), and responded in opposition to Plaintiff's motion to withdraw his admissions (Doc. 28). Plaintiff did not file a reply in support of his motion to withdraw his admissions. On December 1, 2023, Plaintiff, on his own, filed a "Motion To Set Aside Judgment" (Doc. 29), and Defendant responded in opposition (Doc. 30), but Plaintiff did not reply.

With briefing completed on the parties' motions, the Court now turns to their merits.

## Discussion

## I.    Plaintiff's Motion To Withdraw Admissions (Doc. 25)

---

[2] Defendant correctly notes in its reply that Plaintiff filed his response one day late. (Doc. 26 at 2-3; *see also* LR 7.1(B) (stating that deadline for summary judgment response is 21 days)). The Court has nevertheless considered Plaintiff's belated response in the interest of determining whether genuine issues of triable fact exist. As explained below, they do not.

Rule 36(a)(3) provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Rule 36(b) further provides:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court *may* permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

FED. R. CIV. P. 36(b) (emphasis added).

On August 15, 2023, Defendant served Plaintiff, via counsel, with First Set of Interrogatories, First Requests for Production of Documents, and First Requests for Admission and filed a certificate of service of those requests. (*See* Doc. 19). The Court's CM-ECF system indicates that the Clerk sent notice to Plaintiff's attorney via email of that filing. It is undisputed that Plaintiff did not respond to Defendant's discovery requests, including the requests for admission, so the matters set forth in the requests for admission are admitted and are "conclusively established" pursuant

to Rule 36, unless the Court allows Plaintiff to withdraw them. In its motion for summary judgment filed on October 16, 2023, Defendant cited to Plaintiff's admissions to support some of its statements of material fact, along with other record evidence, including the Declaration of Lisa Young, Defendant's Client Resolution Specialist, account statements, and correspondence to Plaintiff about his account. (*See* Def. SMF ¶¶ 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 17, 18, 20, 21, 28, 29). On November 7, 2023, Plaintiff filed a motion requesting that the Court allow him to withdraw his admissions and file out-of-time responses. (Doc. 25).

"[D]istrict courts should apply a 'two-part test' in deciding whether to grant or deny a motion to withdraw or amend admissions." *Perez v. Miami-Dade County*, 297 F.3d 1255, 1264 (11th Cir. 2002) (quoting *Smith v. First Nat'l Bank*, 837 F.2d 1575, 1577 (11th Cir. 1988)). "First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case." *Id.* "A withdrawal subserves the presentation of the merits when it aids in the ascertainment of truth." *Chavez v. Encompass Ins. Co. of Am.*, No. 1:08-cv-2965-TCB, 2009 U.S. Dist. LEXIS 139680, at *6 (N.D. Ga. June 8, 2009) (citing *Perez*, 297 F.3d at 1266). "This two-part test specifies the limits of the district court's discretion in permitting the withdrawal of admissions." *Id.* (citing *Perez*, 297 F.3d at 1265). "A court may deny a motion to

withdraw admissions when the movant gives inadequate explanation for the motion." *Id.* at \*7 (citing *Jones v. Employers Ins. of Wausau*, 96 F.R.D. 227, 229-30 (N.D. Ga. 1982)). "A court may also deny a motion to withdraw admissions when one of the test's two parts is not satisfied." *Id.* (citing *Perez*, 297 F.3d at 1265). "The party seeking to withdraw its admissions has the burden of proving that it is entitled to that relief." *LeVins v. Delta Air Lines, Inc.*, No. 1:20-cv-01561-TWT-AJB, 2021 U.S. Dist. LEXIS 271011, at \*6 (N.D. Ga. June 17, 2021).

Plaintiff does not dispute that he did not respond to the requests to admit (Doc. 25-1 at 2), even though Defendant served the requests on Plaintiff's counsel on August 15, 2023 and the Clerk emailed a notice of filing of the Certificate of Service of those requests on Plaintiff's counsel on the same day (*see* Doc. 19). Instead, Plaintiff waited until November 7, 2023, almost three months after service of the requests and three weeks after Defendant filed its motion for summary judgment, to seek to withdraw his admissions and to respond to Defendant's requests for admissions. Plaintiff offers no explanation for his failure to respond to the requests for admissions within 30 days as required by Rule 30(a) or for his delay in seeking to withdraw those admissions until after Defendant filed its motion for summary judgment.

Critically, Plaintiff has not satisfied both elements of the two-part test for allowing a party to withdraw his admissions. In particular, Plaintiff has not shown

that the withdrawal "will subserve the presentation of the merits." *Perez*, 297 F.3d at 1264. Plaintiff's entire argument in support of that issue is as follows: "[S]ince these admission[s] address[] nearly all the essential elements of the claim, the merits of the claim are served by their withdrawal." (Doc. 25-1 at 3). Plaintiff did not discuss each admission to show how its withdrawal would subserve presentation of the merits or even provide examples of how the withdrawal of any of his admissions would promote the presentation of the merits. *See, e.g.*, *LeVins*, 2021 U.S. Dist. LEXIS 271011, at *8 ("Although Plaintiff argues that Connect is attempting to deprive her of an opportunity to present the merits of her claims and to foreclose relief, she does not specifically identify to which RFAs she is referring."). Nor did he supply his proposed out-of-time responses to the requests for admissions to support his contention that allowing him to withdraw his admissions would subserve the presentation of the merits. Plaintiff has not identified which requests for admission he would admit or deny or address the substance of each admission to show how allowing him to withdraw his admissions—any or all of them—would promote the presentation of the merits. The undersigned also notes that—as discussed below—Defendant also presented other documentary support for its factual assertions made in its motion for summary judgment, in addition to citing to Plaintiff's admissions, so that the resolution of Defendant's motion does not rest entirely on the admissions. Thus, Plaintiff has not met the first prong of the two-part

test for determining whether the Court should allow him to withdraw his admissions under Rule 36(b).

As to the second prong of the Rule 36(b) test to justify withdrawal of admissions, i.e., prejudice to Defendant, Plaintiff contends that "it is difficult to imagine any prejudice to the Bank outside of having to litigate its case, and that type of 'prejudice' simply does not merit great consideration. Certainly, the Bank has not intimated any potential prejudice such as missing witnesses or the like." (Doc. 25-1 at 3-4). The Court is not persuaded by Plaintiff's argument. The Court notes that Plaintiff did not respond to any of Defendant's discovery requests, including interrogatories, requests for production of documents, and requests for admissions, and he then waited until after the close of discovery and after Defendant had filed its motion for summary judgment to seek to withdraw his admissions. *See, e.g. Nat'l Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1091-92 (N.D. Ala. Mar. 13, 2018) (finding prejudice to plaintiff where defendant belatedly served his responses to the requests for admission after the end of discovery and after plaintiff filed a motion for summary judgment and "offered no defense, reason, or excuse for the late submission of his responses"); *cf LeVins*, 2021 U.S. Dist. LEXIS 271011, at *11-12 (finding that defendant would not be prejudiced by withdrawal of admissions because the discovery deadline was still weeks away and could be extended if necessary). Nevertheless, because "both prongs of the Rule 36(b) test must be met

to justify withdrawal," *Baker v. Potter*, 212 F.R.D. 8, 14 (D.D.C. 2002), the Court need not rely solely on the prejudice to Defendant to decide Plaintiff's motion to withdraw his admissions. *See Chavez*, 2009 U.S. Dist. LEXIS 139680, at *7 ("A court may [] deny a motion to withdraw admissions when one of the test's two parts is not satisfied.") (citing *Perez*, 297 F.3d at 1265).

Because Plaintiff has not satisfied both prongs of the two-part test for withdrawal of his admissions, Plaintiff's motion to withdraw his admissions and file out-of-time responses to Defendant's requests for admissions (Doc. 25) is **DENIED**. *See, e.g.*, *Schott v. Am. Express Co.*, No. 2:17-CV-149-RWS-JCF, 2019 U.S. Dist. LEXIS 61876, at *4-9 (N.D. Ga. Jan. 4, 2019) (recommending that motion to withdraw admissions, made after close of discovery and after defendant filed motion for summary judgment, be denied where plaintiff did not explain how withdrawal would subserve the presentation of the merits and defendant "also presented other documentary support for its assertions made in its motion for summary judgment, in addition to citing to Plaintiff's admissions, so that the resolution of Defendant's motion does not rest entirely on the admissions"), *adopted by* 2019 U.S. Dist. LEXIS 61872 (N.D. Ga. Feb. 5, 2019); *Abedi v. US Bank Nat'l Ass'n*, No. 1:16-CV-1747-SCJ, 2017 U.S. Dist. LEXIS 213752, at *12-13 (N.D. Ga. Oct. 2, 2017) (finding that magistrate judge correctly denied motion to withdraw admissions because the plaintiffs' "conclusory assertion that Ms. Abedi's testimony would become

'adversarial and contrary to the requests for admission provided by her husband' "
was made "without any explanation or citation to the record" and therefore was
insufficient to show that withdrawal of the admissions would subserve the
presentation of the merits of the case); *McCurry v. Bank of Am., N.A.*, Case No. 2:16-
cv-00191-RFB-PAL, 2017 U.S. Dist. LEXIS 78309, at *19 (D. Nev. May 22, 2017)
(denying motion to withdraw where movant did not meet "its burden under Rule
36(b) of establishing that the presentation of the merits of the action will be
subserved"); *Wilson v. Comlux Am.*, No. 1:11-cv-00980-RLY-MJD, 2013 U.S. Dist.
LEXIS 20520, at *4-7 (S.D. In. Feb. 14, 2013) (denying motion to withdraw or
amend admissions filed after close of discovery and after defendant filed motion for
summary judgment due to prejudice to defendant); *Centrifugal Acquisition Corp. v.
Moon*, 267 F.R.D. 240, 241 (E.D. Wisc. Apr. 13, 2010) (declining withdrawal where
it would "not subserve the merits because the admissions are consistent with the
evidentiary record already established"); *United States v. Persaud*, 229 F.R.D. 686,
693 (M.D. Fla. 2005) (denying motion to withdraw where "withdrawal of [the
plaintiff's] deemed admissions would not promote the presentation of the merits of
this case"), *vacated on other grounds by* 235 F.R.D. 696 (M.D. Fla. 2005); *Baker*,
212 F.R.D. at 14 (denying motion to withdraw admissions where moving party could
not show that its admissions "practically eliminate[d] its case on its merits").

## II.    Defendant's Motion For Summary Judgment (Doc. 23)

## A.    <u>Summary Judgment Standard</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by[] . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *see also Arnold v. Litton Loan Servicing*, *LP*, No. 1:08-cv-2623-WSD, 2009 WL 5200292, at *4 (N.D. Ga. Dec. 23, 2009) ("The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.") (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999)). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and by her own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. *See Celotex*, 477 U.S. at 322, 324. "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to

establish the existence of an element . . . on which that party will bear the burden of proof at trial.' " *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991), *cert. denied*, 506 U.S. 952 (1992); *see also* FED. R. CIV. P. 56(c)(1)(B), (c)(4). The evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan*, 932 F.2d at 1577. Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984).

For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *Id.* at 249, 255. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255.

**B.** <u>**Facts**</u>

The facts, for summary judgment purposes only, are derived from Defendant's statement of undisputed material facts (Doc. 23-2, "Def. SMF"); Plaintiff's response to Defendant's statement of facts (Doc. 24-10 at 1-5); Plaintiff's statement of additional facts (Doc. 24-10 at 5-8, "Pl. SMF"); Defendant's response to Plaintiff's statement of facts (Doc. 27); and undisputed record evidence. The facts are construed in the light most favorable to Plaintiff as the non-movant. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1309 (11th Cir. 2001).

Plaintiff claims that Truist "erroneously reported" two late payments on his Home Equity Line of Credit ("HELOC") account, ending in -5998 (the "Account") for April and May 2022. (Def. SMF ¶ 1). Plaintiff opened the Account on October 28, 2021 by agreeing to the Truist Equity Line Account Agreement and Disclosure Statement ("Account Agreement"). (Def. SMF ¶ 2; *see also* Doc. 23-3 at 9-16). Truist sent Plaintiff a letter informing him that the Account number would change to -5998 effective February 20, 2022 after SunTrust transitioned to Truist. (Doc. 24-2 at 1). The copy of that letter provided by Plaintiff contains a handwritten note, presumably by Plaintiff, that states "Never Transferred old payments to new account" with a dispute number. Plaintiff also states in his Declaration that "[t]he Bank failed to transfer all the payments on the old account to the new account with the Bank. I filed a dispute with the Bank regarding the same." (Declaration of

Timothy L. King (Doc. 24-1), ¶ 3). As discussed below, this evidence fails to create a genuine issue of material fact on any of the issues in this case.[3]

The Account Agreement provides that Plaintiff will receive periodic statements for the Account that "will identify the Minimum Payment [he] must make for the billing period and the date it is due." (Def. SMF ¶ 3). The periodic statements show credit advances, finance charge, payments, other credits, the previous balance, and the new balance on the Account. (Def. SMF ¶ 3). The Account Agreement states that "[p]ayments in excess of your Minimum Payment will not relieve you of your obligation to make your Minimum Payments in the future. Instead, they will be applied to any Option and/or Advance balance at Lender's sole discretion." (Def. SMF ¶ 4; *see also* Doc. 23-3 at 14).

The Account statement dated January 30, 2022 reflects that a minimum payment of $1,153.22 was due on February 25, 2022. (Def. SMF ¶ 5; *see also* Doc. 23-3 at 18). In response to Def. SMF ¶ 5, Plaintiff "dispute[s] that the amounts allegedly owed and reflected on the document were accurately calculated," citing to

---

[3] The Court also notes that Defendant objects to the Court's consideration of factual assertions and documents Plaintiff provides in support of his response to the motion for summary judgment because Plaintiff failed to respond to Defendant's discovery requests, including interrogatories and requests for production of documents. (*See generally* Doc. 27). Defendant's objections have merit, but the Court has nevertheless reviewed Plaintiff's Declaration and documents cited therein out of an abundance of caution and finds that they do not create a genuine issue of material fact to be tried.

his Declaration at paragraphs 4 and 8. (Pl. resp. to Def. SMF ¶ 8). Those paragraphs of his Declaration (Doc. 24-1) state that Plaintiff "believe[s] that the Bank misapplied payments and committed other errors relating to my LOC which resulted in damage to me" (King Decl. ¶ 4) and that "[t]he Bank confirmed my beliefs and concerns that it has committed errors related to my LOC account at least twice in correspondence admitting and apologizing for errors related to my LOC account and reflecting corrective actions the Bank was forced to take to correct their mistakes" (King Decl. ¶ 8). Plaintiff did not, however, state that the minimum amount due in the January 30, 2022 statement was inaccurate, nor has he provided documentation to support such an assertion. The referenced letters attached to his Declaration[4] are an August 9, 2022 letter informing Plaintiff that "[a]fter further review of your account status, we have reinstated your ability to advance your line of credit" after having suspended it (Doc. 24-5 at 1) and a November 30, 2022 letter which stated "[y]our recent line of credit payment was misapplied, resulting in your minimum monthly payment not being satisfied. We have corrected this error and re-applied your payment to satisfy your minimum monthly amount due." (Doc. 24-5 at 2). Neither of these letters show that the minimum amount due on the *January 30, 2022*

---

[4] Plaintiff referenced "Exhibit 4" in his Declaration, but Plaintiff's exhibits are not numbered.

statement was inaccurate, nor has he provided any other documentation to dispute that amount.

An interim Account statement dated February 21, 2022 shows that a payment of $1,600 was made on the Account on February 3, 2022. (Def. SMF ¶ 6; *see also* Doc. 23-3 at 23). The February 21, 2022 statement does not reflect any late fees assessed on the Account, and Plaintiff admits that Truist did not assess late fees on the Account in February 2022. (Def. SMF ¶ 7). The February 3, 2022 payment of $1,600 satisfied the amount due on the Account for February 25, 2022. (Def. SMF ¶ 8).

The Account statement dated February 28, 2022 shows that $676.96 was due on the account by March 25, 2022. (Def. SMF ¶ 9; *see also* Doc. 23-3 at 29). Similar to his response to Def. SMF ¶ 5, Plaintiff "dispute[s] that the amounts allegedly owed and reflected on the document were accurately calculated," citing to his Declaration at paragraphs 4 and 8. (Pl. resp. Def. SMF ¶ 9). Plaintiff did not state in his Declaration that the February 28, 2022 Account statement showing a minimum payment due of $676.96 was inaccurate, nor has he provided any documentation showing that it is inaccurate. The referenced letters cited in his Declaration discussed above do not address the February 28, 2022 statement and do not refute the amount due stated in that statement. The February 28, 2022 Account statement does not

reflect any late fees assessed on the Account, and Plaintiff admitted that Truist did not assess late fees on the Account in February 2022. (Def. SMF ¶ 10).

The statement dated March 31, 2022 shows that no payment was made on the Account in March 2022, and Plaintiff admitted that he made no payment on the Account in March 2022. (Def. SMF ¶ 11; *see also* Doc. 23-3 at 32). In response to Def. SMF ¶ 11, Plaintiff wrote, "the document speaks for itself" and that he "has filed a Motion to Withdraw Admissions contemporaneously with the filing of these responses." (Pl. resp. Def. SMF ¶ 11). As discussed above, the Court has denied Plaintiff's motion to withdraw his admissions. Moreover, Plaintiff has not provided any evidence that creates a triable issue of fact on whether he made a payment on the Account in March 2022. Even if Plaintiff's $1,600 payment on February 3, 2022 could have been used to pay both his February and March 2022 obligations, that payment would not have satisfied the amounts due for both February 25, 2022 ($1,153.22) and March 25, 2022 ($676.96), which totaled $1,830.18. (Def. SMF ¶ 13; *see also* Declaration of Lisa Young (Doc. 23-3 at 2-7), ¶ 11). In response to Def. SMF ¶ 13, Plaintiff "disputes that the amounts allegedly owned and reflected on the document were accurately calculated," citing to his Declaration at paragraphs 4 and 8. For the same reasons discussed above, Plaintiff's Declaration and the letters cited therein do not create a triable issue of fact on whether the February and March Account statements accurately stated the minimum amounts due, on whether

17

Plaintiff made a payment in March 2022, and on whether the $1600 he paid in February was sufficient to satisfy the minimum amount due in March 2022, even assuming that excess payment in February could be used to satisfy the minimum amount due in March.

The March 31, 2022 Account statement does not reflect any late fees assessed on the Account, and Plaintiff admitted that Truist did not assess late fees on the Account in March 2022. (Def. SMF ¶ 14). The March 31, 2022 statement shows that the minimum payment of $1,353.92 was due by April 25, 2022. (Def. SMF ¶ 15; *see also* Doc. 23-3 at 32). In response to Def. SMF ¶ 15, Plaintiff "dispute[s] that the amounts allegedly owed and reflected on the document were accurately calculated," citing his Declaration at paragraphs 4 and 8, but for the same reasons discussed above, those statements and the referenced letters do not show that the minimum amount stated as due by April 25, 2022 on the March 31, 2022 letter was inaccurate or create an issue of fact on that issue.

On April 26, 2022, Truist sent Plaintiff a letter stating that it had not received the required payment of $1,353.92 on the Account. (Def. SMF ¶ 16; *see also* Doc. 23-3 at 35). Plaintiff has not pointed to evidence that he made that payment. Instead, he "dispute[s] that the amounts allegedly owed and reflected on the document were not accurately calculated" based on his Declaration at paragraphs 4 and 8, i.e., based on his belief that Defendant did not properly credit unspecified payments and based

on the referenced letters from Defendant, which do not specifically refer to his March and April payments (or lack of those payments). (*See* King Decl. ¶¶ 4, 8; Docs. 24-5 at 1-2). Plaintiff has not pointed to evidence that creates a triable issue of fact on whether the minimum payment due was $1,353.92 or on whether he made the required minimum payment by April 25, 2022. On April 29, 2022, Truist sent Plaintiff a Notice of Temporary Suspension of Credit based on "Delinquency on this account." (Doc. 24-3).

The statement dated April 30, 2022 reflects a $930 payment made on the Account on April 28, 2022. (Def. SMF ¶ 17; *see also* Young Decl. ¶ 13; Doc. 23-3 at 41). The $930 payment was made past the payment deadlines for both March and April, and it was not enough to cover the minimum amount due on the Account on April 25, 2022, i.e., $1,353.92. (Def. SMF ¶ 18; *see also* Young Decl. ¶ 14). As of April 25, 2022, the Account was 30 days past due for the March 2022 payment. (Def. SMF ¶ 19; *see also* Young Decl. ¶ 15). Although Plaintiff does not dispute that he made a $930 payment on April 28, 2022, he "disputes that the amounts allegedly owed and reflected on the document were accurately calculated," citing to his Declaration at paragraphs 4 and 8. (Pl. resp. Def. SMF ¶¶ 17, 18, 19). That evidence, including the letters referenced in his Declaration, does not create an issue of fact on whether the minimum amounts due on the Account in March and April 2022 were accurate, on whether Plaintiff made the minimum payments owed on the Account in

March and April 2022, on whether the $930 payment made on April 28, 2022 was made past the deadlines for his March and April payments, and on whether the Account was 30 days past due for the March 2022 payment.

The April 30, 2022 statement shows that a payment of $1,134.72 was due on May 25, 2022, and it shows that a late fee of $33.84 was assessed on April 4, 2022. (Def. SMF ¶ 20; *see also* Doc. 23-3 at 39, 41). Plaintiff disputes that the amounts owed and reflected on the document were accurately calculated (Pl. resp. to Def. SMF ¶ 20), but the cited evidence, i.e., his Declaration and the letters referenced therein, do not create an issue of fact on whether the minimum amount due shown on the April 30, 2022 statement was accurate.

The statement dated May 31, 2022 shows that no payment was made on the Account in May 2022, and Plaintiff admitted he made no payment on the Account in May 2022. (Def. SMF ¶ 21; *see also* Doc. 23-3 at 44, 46). When Plaintiff failed to make a payment in May 2022, the Account became 60 days past due for the March 2022 payment and 30 days past due for the April 2022 payment. (Def. SMF ¶ 22; Young Decl. ¶ 17). On May 24, 2022, Truist sent Plaintiff a letter stating the Account was two payments past due. (Def. SMF ¶ 23; *see also* Doc. 23-3 at 48; Doc. 24-4). Plaintiff disputes that the amounts allegedly owed and due dates reflected on the documents referenced in Def. SMF ¶¶ 21-23 "were accurately calculated," citing to his Declaration paragraphs 4 and 8. (Pl. resp. Def. SMF ¶¶ 21-23). Plaintiff's

Declaration and the letters referenced therein do not create an issue of fact on whether the minimum payments due in March, April, and May 2022 were accurately stated on the Account statements, on whether Plaintiff made a payment in March 2022, on whether Plaintiff made a timely payment in April 2022, on whether the April 28, 2022 payment was sufficient to satisfy the minimum payments due for March and April 2022, on whether Plaintiff made a payment in May 2022, and on whether Plaintiff's Account was 30 days past due for the April payment and 60 days past due for the March payment as of the May 31, 2022 statement.

In June and July 2022, Plaintiff disputed Truist's reporting of the late payments on the Account with the consumer reporting agencies ("CRAs"). (Def. SMF ¶ 24; *see also* Doc. 23-3 at 52-53, 55-56). Plaintiff claimed that Truist received adequate payments and that the Account was current. (Def. SMF ¶ 24; *see also* Doc. 23-3 at 52). The CRAs then forwarded Plaintiff's disputes to Truist, as the furnisher of the Account information, for investigation via automated credit dispute verification ("ACDV") forms. (Def. SMF ¶ 25; *see also* Doc. 23-3 at 52-53, 55-56). On July 14, 2022, Truist responded to the first ACDV from Plaintiff, which Truist received from CRA Experian. (Def. SMF ¶ 26; *see also* Doc. 23-3 at 52-53). Truist indicated in its response that the Account was one month late in April 2022 by placing a "1" in the April 2022 payment history box and two months late in May 2022 by placing a "2" in the May 2022 payment history box. (Def. SMF ¶ 26; *see*

*also* Doc. 23-3 at 53). Under industry guidance from the Consumer Data Industry Association, "1" is used to show an account is 30-59 days past due, and "2" is used to indicate an account is 60-89 days past due. (Def. SMF ¶ 26; *see also* Doc. 23-5). On August 5, 2022, Truist responded to a second ACDV, this time from CRA Trans Union. (Def. SMF ¶ 27; *see also* Doc. 23-3 at 55-56). Truist indicated in its response that the Account was one month late in May 2022 by including a "1" in the May 2022 payment box. (Def. SMF ¶ 27; *see also* Doc. 23-3 at 56). Plaintiff "does not dispute that Defendant responded as stated but disputes the accuracy of the information contained in that response," citing to his Declaration paragraphs 4 and 8 and the letters referenced therein cited as Exhibit 8. (Pl. resp. Def. SMF ¶¶ 26-27). As discussed above, none of that cited evidence creates an issue of fact on whether Plaintiff's Account was past due as reported by Defendant. By August 31, 2022, the information that Truist furnished to the credit bureaus no longer showed late payments for April and May 2022. (Def. SMF ¶ 28; Young Decl. ¶ 21). Plaintiff admitted that he was not declined credit between July 14, 2022, when Truist responded to the first ACDV, and August 2022, at which time Truist had stopped reporting the late payments alleged in the Complaint. (Def. SMF ¶ 29; *see also* Def. RFA 15).[5]

---

[5] Plaintiff states in his Declaration that he was denied credit prior to those dates. (King Decl. ¶¶ 10-11; *see also* Docs. 24-7, 24-8).

On August 9, 2022, Truist sent Plaintiff a letter informing him that it had reinstated his ability to advance on his line of credit and "apologize[d] for any inconvenience this may have caused," although the letter did not provide the reasons for either its previous decision to suspend his account or its decision to reinstate it. (Doc. 24-5). On November 20, 2022, Truist sent Plaintiff a letter to "apologize for an error we made related to your line of credit payment" and explained that his "recent line of credit payment was misapplied, resulting in your minimum monthly payment not being satisfied." (Doc. 24-5). The letter did not specify what payment was misapplied.

### C.   <u>Analysis</u>

Plaintiff alleges in his Complaint that Defendant erroneously reported two late payments on Plaintiff's HELOC account to the CRAs, which harmed his credit rating and abilities to obtain credit, and that Defendant failed to remove the inaccurate reporting for five months after Plaintiff disputed it with the CRAs and with Defendant. (Doc. 1-1 at 4-6). Although he did not cite to the FCRA in his Complaint, Plaintiff asserts in response to Defendant's motion for summary judgment that he "seeks relief pursuant to the Fair Credit Reporting Act ('FCRA'), 15 U.S.C. § 1681s-2(b)." (Doc. 24 at 2). Defendant moves for summary judgment on the grounds that its "reporting of the late payments was accurate," and Plaintiff

failed to submit any evidence of damages caused by any purported violation. (Doc. 23-1 at 2).

"The FCRA was enacted 'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" *Turner v. Wells Fargo Dealer Servs.*, No. 1:17-cv-01257-TCB-CMS, 2017 U.S. Dist. LEXIS 219395, at *10-11 (N.D. Ga. Oct. 23, 2017) (quoting 15 U.S.C. § 1681(b)), *adopted by* 2017 U.S. Dist. LEXIS 219394 (N.D. Ga. Nov. 13, 2017). "To achieve its purpose, the FCRA places distinct obligations on three types of entities: consumer reporting agencies ('CRAs'), users of consumer reports ('users'), and furnishers of information ('furnishers')." *Turner*, 2017 U.S. Dist. LEXIS 219395, at *11 (citing *Chipka v. Bank of Am.*, 355 Fed. App'x 380, 382 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1681s-2)). Here, Truist Bank is a furnisher of information to the CRAs.

"The FCRA imposes two separate duties on furnishers," i.e., "1681s-2(a) requires furnishers to submit accurate information to CRAs," while "§ 1681s-2(b) requires furnishers to investigate and respond promptly to notices of customer disputes." *Turner v. Wells Fargo Dealer Servs.*, No. 1:17-cv-01257-TCB-CMS, 2017 U.S. Dist. LEXIS 219395, at *11 (N.D. Ga. Oct. 20, 2017) (citing *Green v.*

*RBS Nat'l Bank*, 288 Fed. App'x. 641, 642 (11th Cir. 2008)), *adopted by* 2017 U.S. Dist. LEXIS 219394 (N.D. Ga. Nov. 13, 2017). § 1681s-2(a) provides no private right of action. *See Chipka*, 355 Fed. Appx. at 383. "Instead, the only private right of action consumers have against furnishers is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute." *Felts v. Wells Fargo Banks, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018). "Upon receipt of a notice from a CRA that a consumer disputes the completeness or accuracy of any information provided by a furnisher, the furnisher must (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA; and (3) report the results of the investigation to the CRA." *Id*.

To prevail on a claim under § 1681s-2(b), a plaintiff must plead and establish: (1) he notified a CRA that he disputed the completeness or accuracy of information in his credit report, (2) the CRA gave notice of the dispute to the appropriate furnisher, and (3) the furnisher either (a) failed to conduct a reasonable investigation of the identified dispute, (b) failed to review all of the relevant information provided by the CRA, (c) failed to report the results of its investigation to the notifying CRA, or (d) if an item is found to be inaccurate, incomplete, or unverifiable, failed to modify, delete, or permanently block the reporting of that information. *Turner*, 2017 U.S. Dist. LEXIS 219395, at *12-13 (citations omitted). "Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a

furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete." *Felts*, 893 F.3d at 1313 (emphasis in original); *see also Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1218 (11th Cir. 2023) (explaining that "a plaintiff cannot recover on a § 1681s-2(b) claim without identifying inaccurate or incomplete information that the furnisher provided to the reporting agency"). "Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation." *Felts*, 893 F.3d at 1313.

Defendant contends that it is entitled to summary judgment on Plaintiff's § 1681s-2(b) claim because its "documents show—and Plaintiff's admissions acknowledge—that the Account was in fact delinquent in April and May 2022." (Doc. 23-1 at 10). As discussed above, it is uncontroverted that Plaintiff did not make a payment in March 2022, including the minimum payment of $676.96 due by March 25, 2022; he did not make the minimum payment of $1,353.92 due by April 25th; his April 28, 2022 payment of $930 was both late and insufficient to satisfy the minimum payment owed; and Plaintiff made no payment in May 2022, including the minimum payment of $1,134.72 due by May 25, 2022. (Def. SMF ¶¶ 9, 11, 13,

15-23; *see also* Doc. 23-3 at 29, 32, 35, 39, 41, 44, 46, 48; Young Decl. ¶¶ 11, 13-15, 17). Thus, as of May 25, 2022, Plaintiff's Account was 60 days past due for the March 2022 payment and 30 days past due for the April 2022 payment, as Defendant reported to the CRAs.

Plaintiff contends, however, that Defendant's reporting was inaccurate because the account statements did not accurately reflect the amounts owed and due dates, relying on Plaintiff's Declaration paragraphs 4 and 8 and the letters cited therein. (Doc. 24 at 7-8; Pl. resp. to Def. SMF ¶¶ 9, 11, 13, 15-23; King Decl. ¶¶ 4, 8; Docs. 24-5 at 1-2). The cited paragraphs of his Declaration state that Plaintiff "believe[s] that the Bank misapplied payments and committed other errors relating to my LOC which resulted in damage to me" (King Decl. ¶ 4) and that "[t]he Bank confirmed my beliefs and concerns that it has committed errors related to my LOC account at least twice in correspondence admitting and apologizing for errors related to my LOC account and reflecting corrective actions the Bank was forced to take to correct their mistakes" (King Decl. ¶ 8). Plaintiff did not, however, state in his Declaration that the minimum payment amounts due stated in the February 28, 2022, March 31, 2022, April 30, 2022, and May 31, 2022 statements were inaccurate or provide a basis for their inaccuracy, nor did he state that he paid the full minimum payments due for those statements. Nor has he provided other documentation to support such assertions. Neither of the referenced letters attached to his

Declaration—an August 9, 2022 letter informing Plaintiff that "[a]fter further review of your account status, we have reinstated your ability to advance your line of credit" after having suspended it (Doc. 24-5 at 1) and a November 30, 2022 letter which stated "[y]our recent line of credit payment was misapplied, resulting in your minimum monthly payment not being satisfied. We have corrected this error and re-applied your payment to satisfy your minimum monthly amount due" (Doc. 24-5 at 2)—show that the information contained in the February, March, April, and May 2022 statements about the minimum amounts due and the payments made or not made by Plaintiff were inaccurate. His conclusory "beliefs" about unspecified errors on his Account, unsupported by documentary evidence concerning those alleged errors, fail to make that showing. If Plaintiff "believes" the minimum payments on his Account statements were not correct, he could have produced (in discovery and in response to Defendant's summary judgment motion) evidence that they were inaccurate, but he did not do so. If he "believes" that he made the payments that the Account statements show were not made, he could have produced evidence that he made those payments, but he did not do so. Instead, he did not respond to any of Defendant's discovery requests, including requests for admissions, and then offered only conclusory statements about unspecified errors in his Declaration and letters that did not specifically reference the Account statements and payments at issue.

Critically, the evidence presented by Plaintiff fails to demonstrate that Defendant's reporting of Plaintiff's late payments to the CRAs was inaccurate.

Because Plaintiff has failed to create a genuine issue of material fact on whether Defendant accurately reported that his Account was 30 days past due in April 2022 and 60 days past due in May 2022, he has not shown that Defendant's reporting at issue was inaccurate. His FCRA claim premised on an alleged violation of 15 U.S.C. § 1681s-2(b) fails. *See, e.g.*, *Felts*, 893 F.3d at 1313-14 (finding that plaintiff's § 1681s-2(b) claim failed because Wells Fargo's reporting was not inaccurate where her "reduced payments, although timely under the Plan, were not the payments she was contractually bound to make under the Note"); *Ware v. Bank of Am. Corp.*, 9 F. Supp. 3d 1329, 1339 (N.D. Ga. 2013) (recommending that summary judgment be granted on § 1681s-2(b) claim because plaintiff "failed to show any actual inaccuracies that Defendant could have found through conducting a reasonable investigation"), *adopted by* 9 F. Supp. 3d 1329, 1331 (N.D. Ga. 2014). Defendant's motion for summary judgment is therefore **GRANTED**.

Defendant also argues that Plaintiff's claim fails because he has no evidence of damages. (Doc. 23-1 at 12-14). Because the Court finds that Plaintiff has not produced evidence that Defendant's reporting was inaccurate, the Court need not reach Defendant's additional argument about damages. The Court notes, however, that Plaintiff produced evidence of credit denials that occurred prior to Defendant's

response to the CRAs, which does not support his § 1681s-2(b) claim because they predate any alleged violation related to Defendant's investigation. Plaintiff also stated in his Declaration in response to Defendant's motion that "the Bank's errors and insufficient investigation on my financial situation caused me to experience stress, anxiety, sleeplessness, feelings of humiliation, and bouts of depression" (King Decl. ¶ 14), but he apparently produced no such evidence during discovery as he did not respond to any of Defendant's discovery requests, including interrogatories and requests for production of documents concerning his alleged damages. (*See* Docs. 26-1, 26-2). Nevertheless, the Court need not decide this issue because Defendant has shown that Plaintiff failed to produce evidence that creates a genuine issue of material fact on whether Defendant's reporting to the CRAs was accurate or inaccurate. Because the undisputed evidence shows that it was accurate, Defendant is entitled to summary judgment.

### III.  Plaintiff's Motion To Set Aside Judgment (Doc. 29)

After briefing concluded on Defendant's motion for summary judgment, Plaintiff, on his own, filed a "Motion To Set Aside Judgment" (Doc. 29) in which he "moves for an order vacating the judgment previously entered against Plaintiff in the above-entitled action." (Doc. 29). Plaintiff's motion is denied. In the first place, when Plaintiff filed the motion, no judgment had been granted against him, so his request to set aside a non-existent judgment is without merit. Moreover, Plaintiff's

motion is not properly before the Court because he is represented by counsel, who has not withdrawn from representation of Plaintiff. Under the Local Rules of this Court, "[w]hen an attorney has appeared on behalf of a party, the party normally may not appear or act on the party's own behalf in the action or proceeding." LR 83.1(D)(2), NDGa. Local Rule 83.1(D)(2) provides an exception if the party "provides notice to the attorney of record and the opposing party of the party's intention to appear on his or her own behalf and obtains an order of substitution from the Court" (*id.*), but Plaintiff did not comply with that Rule. Plaintiff has not shown that he notified his own attorney or opposing counsel that he intended to appear on his own behalf, and he has not requested, nor has the Court issued, a substitution order. Thus, Plaintiff's motion is improper. *See, e.g.*, *Farrakhan v. DAL Global Servs.*, No. 1:19-cv-5804-MLB, 2021 U.S. Dist. LEXIS 175070, at *5-6 (N.D. Ga. Sept. 14, 2021) (striking letter filed *pro se* by plaintiff who was represented by counsel because plaintiff did not comply with LR 83.1(D)(2) and the letter was therefore "simply not permitted").

The Court notes that most of Plaintiff's motion is devoted to his assertions about his attorney's alleged deficiencies in representing him, including failure to conduct discovery and to provide evidence in support of his response to Defendant's motion for summary judgment. (*See generally* Doc. 29). Plaintiff requests that he be allowed "to introduce oral evidence to corroborate and supplement the evidence

contained in his declaration herein[.]" (*Id*. at 2). As discussed above, Plaintiff's motion is improper due to his failure to comply with LR 83.1 and because at the time the motion was filed, no judgment had been entered against him. Nor will the Court consider Plaintiff's assertions, made for the first time on December 1, 2023, well beyond the discovery deadline and the summary judgment response time, in connection with his response to Defendant's motion for summary judgment. To the extent Plaintiff seeks relief due to his attorney's alleged actions, or inactions, "[a] party cannot avoid the consequences of the acts or omissions of his voluntarily selected 'lawyer-agent,' " and "is generally bound by all acts and omissions of his attorney." *Shuler v. Ingram & Assocs*., 441 F. App'x 712, 719 (11th Cir. 2011) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)). Plaintiff's request to present "oral evidence" is therefore denied as well.

Accordingly, Plaintiff's Motion To Set Aside Judgment (Doc. 29) is **DENIED**.

## Summary

For the foregoing reasons, Defendant's Motion For Summary Judgment (Doc. 23) is **GRANTED**, Plaintiff's Motion To Withdraw Admissions And File Out-Of-Time Responses (Doc. 25) is **DENIED**, and Plaintiff's Motion To Set Aside Judgment (Doc. 29) is **DENIED**.

The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 6th day of August, 2024.

/s/ J. Clay Fuller
J. CLAY FULLER
UNITED STATES MAGISTRATE JUDGE